UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tim Mackey and John Nesse, as Trustees of the Minnesota Laborers Health and Welfare Fund, | Case No.14-cv-2024 (PAM/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Terri Lynn Johnson, as trustee for the heirs and next of kin of Timothy M. Scherf, Meshbesher &Spence, Ltd., and The Duluth Clinic, Ltd., d/b/a Essentia Health Deer River Clinic, | |
| Defendants. | |

This matter is before the Court on Motions for Summary Judgment filed by Plaintiffs and Defendant the Duluth Clinic Ltd. For the reasons that follow, Plaintiffs' Motion is granted and the Clinic's Motion is denied as moot.

**BACKGROUND**

This case presents the question of whether an ERISA plan has the right to recover money paid to a plan beneficiary's heirs under Minnesota's wrongful death statute. Defendant Terri Johnson is the wrongful-death trustee for the heirs of her brother Tim Scherf, who had health insurance through the Minnesota Laborers Health and Welfare Fund. Mr. Scherf died of lung cancer in August 2012. Plaintiffs are the Trustees of the Fund.

Before Scherf died, he engaged the assistance of Defendant Meshbesher & Spence ("Meshbesher") to explore the viability of a medical malpractice action against Defendant The Duluth Clinic d/b/a Essentia Health Deer River Clinic (hereinafter the "Clinic").   In March 2012, Meshbesher notified the Fund of the potential claim.  (Skoog Aff. (Docket No. 68) Ex. B.)   The Fund responded that it had already paid nearly $120,000 in medical expenses related to Scherf's cancer diagnosis and treatment, and asserted a subrogation interest against the potential malpractice claim for those expenses and any future medical expenses Scherf incurred.   In May 2012, Scherf and Johnson (as Scherf's power of attorney) executed a subrogation agreement providing that "in the event monies are recovered [in the potential claim against the Clinic], the Fund is entitled to recover the amount it expended in relation to the illness/injury giving rise to your claim."  (Id. Ex. C.)   The Fund thereafter continued to pay Scherf's medical expenses, ultimately paying $236,700.16.  (Id. Ex. D.)

After Scherf's death, Johnson, represented by Meshbesher, brought a wrongful death lawsuit in state court against the Clinic, alleging that the Clinic misdiagnosed Scherf and that the delay in treating his lung cancer led to his death, and seeking damages under Minnesota's wrongful death statute, Minn. Stat. § 573.02.  Johnson and the Clinic settled the lawsuit in September 2013.  Because of the Trustees' claim in this matter, just over $236,000 has been deposited in Meshbesher's trust account pending the result of this lawsuit.

The Trustees now seek summary judgment that the Fund is entitled to the $236,000 or, in the alternative, that the settlement between Johnson and the Clinic did not release any claims for Scherf's medical expenses, allowing the Trustees to pursue a claim against the Clinic for those expenses. The Clinic's Motion (and its opposition to the Trustees' Motion) does not dispute that the settlement included claims for Scherf's medical expenses. The Clinic argues only that, should the Court determine that the settlement did not include medical expenses, the Trustees cannot bring a claim against the Clinic for those expenses. Defendants Johnson and Meshbesher dispute the Trustees' Motion, contending that the settlement did not include Scherf's medical expenses

**DISCUSSION**

According to the Summary Plan Description, the Fund retains a first-party subrogation interest in any money paid "to or on behalf of th[e] Participant" by a responsible third party for "injuries, sickness, or death." (Skoog Aff. Ex. A at 102, 103.) There is no dispute that a claim for medical expenses falls under the terms of the Plan's subrogation provisions. The Plan repeatedly refers to "the Participant," "the Participant's cause of action," and "the Participant's losses, damages, injuries or claims." The Plan also states that the subrogation right applies to "all awards or settlements received by the Participant from any third party . . . regardless of how the award or settlement is characterized (including, but not limited to, any apportionment to a spouse for loss of consortium)." (Id. at 105.)

3

Thus, the question is whether the claims Johnson raised or released in the underlying lawsuit are claims made on behalf of Scherf, who was the Plan Participant, or are claims that belong to Scherf's beneficiaries. If the claims are Scherf's—in other words, if the claims are claims that he could have raised that survived his death (what some courts call survivorship claims)—the Fund is entitled to its subrogation interest in money paid to settle those claims. If, however, the claims are not Scherf's—if they are claims that only the beneficiaries could raise, or wrongful-death claims—the Fund has no subrogation interest in those claims. Thus, for example, claims for pain and suffering of the decedent are clearly Scherf's, whereas claims for loss of companionship, comfort, guidance, and the like belong only to Scherf's beneficiaries. See, e.g., McInnis v. Provident Life & Accident Ins. Co., 21 F.3d 586, 589 (4th Cir. 1994) (describing survival statute damages versus wrongful death statute damages, and finding that North Carolina's wrongful death statute allows both types of claims for damages). To determine to whom the claims in the underlying lawsuit belong, the Court must examine Minnesota's wrongful death statute.

## A.      Minnesota's Wrongful Death Statute

Johnson and Meshbesher insist that Minnesota's wrongful death statute is limited only to those claims that are pure wrongful death claims and excludes any survivorship-type claims. But the language of the statute belies this contention. The statute provides that the wrongful death trustee "may maintain an action [against a person or entity that wrongfully causes the death] if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission." Minn. Stat.

§ 573.02.  Minnesota's survival statute provides that "[a] cause of action arising out of an injury to the person dies with the person . . . except as provided in section 573.02."  Id. § 573.01.  Read together, these two sections seem to indicate that a wrongful death trustee can bring an action for an injury to the decedent, and not merely an action for injuries to the decedent's beneficiaries.

Defendants' insistence that the wrongful death statute precludes any claims on behalf of the decedent arises from this language in the statute:  "[t]he recovery in the action . . . shall be for the exclusive benefit of the surviving spouse and next of kin."  Id. § 573.02.  But there is a difference between the party for whom damages are available in a wrongful death action and the party to whom those claims belong. As the Fourth Circuit explained,

> the distinction between survival statutes and wrongful death statutes turns on the difference between those claims based on damages preceding death which were inflicted on and belonged to the decedent, and those claims based on damages caused by the decedent's death which belonged to family members.

McInnis, 21 F.3d at 589.  A damages claim for medical bills would be a claim based on damages preceding death, and would thus belong to the decedent.

The conclusion that Minnesota's wrongful death statute is not limited to actions that belong to beneficiaries is bolstered by the wrongful death JIG, which lists as a factor the jury should consider, "all reasonable expenses for support due to [the decedent's] last sickness, including necessary medical and hospital expenses incurred after and as a result of the injuries causing death."  4A Minn. Civ. JIG 91.75.

Johnson and Meshbesher contend that Johnson did not seek any medical-expense damages as part of her lawsuit against the Clinic.  The settlement agreement's language on this point is ambiguous.  The settlement provides that it "includes all applicable medical liens and subrogation claims."  (Waterworth Aff. Ex. C at 1.)  But the release Johnson signed in conjunction with the settlement agreement states that Johnson is giving up all

> claims, actions, causes of action and assertions of liability of every type on account of, or in any way arising out of, any and all injuries and damages, known or unknown, foreseen or unforeseen, direct, indirect or consequential, <u>suffered or sustained by [Johnson]</u> as a result of the medical care and treatment rendered to Timothy M. Scherf [by the Clinic.]

(<u>Id.</u> Ex. D at 1 (emphasis added).)

Given the ambiguity in the settlement documents, the Court must examine other record evidence.  Johnson's state-court complaint sought damages "to the full extent permitted by Minn. Stat. § 573.02."  (Court Aff. Ex. Q (Defs.' Response to Interrogs.) ¶ 2.)  As discussed, Minnesota's wrongful death statute permits the recovery of the decedent's medical expenses.  And in the statement Johnson submitted to the state-court mediator, she listed as part of her damages medical expenses of more than $220,000. (Court Aff. Ex. L.)  Moreover, Johnson and Meshbesher informed Magistrate Judge Brisbois at a discovery hearing that Scherf's medical expenses were included within the settlement.  (Court Aff. Ex. P (July 21, 2015, Hr'g Tr.) at 42.)  Having made that representation to the Court, Johnson and Meshbesher cannot now claim the opposite. Thus, the claims settled included a claim for Scherf's medical expenses, and the Trustees

are entitled to claim a subrogation interest to the extent that the Funds paid these medical expenses.

## B.    Contract

Defendants also argue that the Plan cannot bind a person who was not a party to the Plan.   But this contention has little relevance to this case.   First, the Plan bound Scherf, and if Johnson sought or released claims for Scherf's medical bills, then she is raising a claim on Scherf's behalf and she is bound as he would have been bound.   But even more directly, Johnson herself signed an acknowledgment that the Fund was subrogated to any recovery involving Scherf's medical bills.   She may not be a party to the underlying Plan, but she is a party to that acknowledgment, which she signed in consideration of the Fund continuing to pay Scherf's medical bills.    The contract argument is without merit.

## C.    Amount of Subrogation

Johnson and Meshbesher argue that there are factual questions regarding how much money the Trustees should receive.   They contend that not all of Scherf's medical bills related to the Clinic's alleged negligence, and thus are not part of the settlement. But the Trustees are not required to sort out which portion of the medical bills Scherf incurred that were directly attributable to the Clinic's failure to diagnose his lung cancer, just as Johnson did not separate out those expenses when seeking a settlement from the Clinic.  The Trustees may receive the amount the Fund paid for Scherf's medical bills

**D.     Attorney's Fees**

The Trustees seek attorney's fees under ERISA § 502, 29 U.S.C. § 1132(g)(1). An award of fees under this section is within the Court's discretion.   Lawrence v. Westerhaus, 749 F.2d 494, 495 (8th Cir. 1994).   The Eighth Circuit has set forth five factors to guide the Court's discretion in making this determination:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan . . . ; and (5) the relative merits of the parties' positions.

Id. at 496 (quoting Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980)).

Having considered the Westerhaus factors, the Court is not convinced that an award of fees is appropriate in this case.  The parties' positions each had merit, and there is no evidence of bad faith.   Moreover, the fees requested would likely constitute a significant portion of the remaining settlement award, leaving Scherf's heirs with very little.  Finally, and perhaps most importantly, the unique circumstances of this case make it doubtful that an award of fees would operate as a deterrence.  The Trustees' request for attorney's fees is denied.

**E.     The Clinic's Motion**

Because the Court concludes that the settlement did include Scherf's medical expenses and thus that the Trustees have a subrogation interest, the Clinic's Motion that

the Trustees cannot alternatively pursue a claim for those expenses against the Clinic is moot.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that:**

1.    Plaintiffs' Motion for Summary Judgment (Docket No. 58) is **GRANTED**;

2.    Defendant the Duluth Clinic's Motion for Summary Judgment (Docket No. 52) is **DENIED as moot**; and

3.    Within ten days of this Order, Defendant Meshbesher & Spence, Ltd. shall transfer the $236,700.16 being held in its trust account to the Minnesota Laborers Health and Welfare Fund.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 14, 2016

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge